IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PATRICIA MITCHELL,<br>*Plaintiff*,<br><br>v.<br><br>NATIONAL CREDIT UNION<br>ADMINISTRATION,<br>*Defendant*. | Case No.: 1:23-cv-649 (MSN/LRV) |

## **MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion to Dismiss and for Summary Judgment (Dkt. No. 15). Upon consideration of the motion, and for the reasons set forth below, the Court will grant the Motion to Dismiss the Equal Pay Act claim and grant the Motion for Summary Judgment on any Title VII claim.

**I.    BACKGROUND**

*Pro se* Plaintiff Patricia Mitchell filed a complaint in the United States District Court for the District of Columbia in which she alleges that Defendant National Credit Union Administration ("NCUA") violated the Equal Pay Act, 29 U.S.C. § 206(d). (Dkt. No. 1) ("Compl."). NCUA is an independent federal agency that insures deposits at federally insured credit unions, protects members who own credit unions, and charters and regulates credit unions.  The matter was transferred to this Court and was docketed on May 18, 2023. (Dkt. No. 14). NCUA has moved to dismiss the Equal Pay Act claim and moved for summary judgment on any Title VII claim. (Dkt. No. 15). The motion is fully briefed, and the Court is satisfied that oral argument would not aid in the decisional process. Accordingly, this matter is ripe for resolution.

### A. Plaintiff's Factual Allegations

In her Complaint, Plaintiff alleges that after applying for a position with NCUA and being notified she was selected for that position following two interviews, she was asked to interview with NCUA for a third time. Compl. at 1-2. Plaintiff also alleges that she was initially offered a salary of $106,000, rejected the offer, and asked instead for a salary of $170,000, which is what Plaintiff alleges other NCUA employees were being paid at that "same grade level." *Id.* at 2. Upon submitting a "request for salary negotiation," Plaintiff alleges she "heard very little feedback." *Id.* Plaintiff states that "[a] salary 15k under what I originally requested (170k) was decided for me," suggesting NCUA had decided to offer Plaintiff an annual salary of $155,000 as part of the negotiations. *Id.* at 3. Plaintiff "believe[s] [NCUA's request for a third interview] was done to eliminate [her] from consideration because [NCUA was] unwilling to pay [her] a comparable salary." *Id.* at 2. She brings a claim under the Equal Pay Act, and alleges that she was discriminated against as an African-American woman. *Id.* at 3. She also alleges that she was subjected to "disparate treatment" in NCUA's hiring process. *Id.*

### B. Statement of Undisputed Facts[1]

The following statement of material facts are undisputed.[2] In September 2021, NCUA posted a vacancy announcement for an IT Specialist (Data Management) position, with a duty

---

[1] This Court has considered evidence outside of the pleadings only for the purposes of evaluating the motion for summary judgment on any Title VII claim.

[2] Plaintiff has not included in her opposition brief a response to NCUA's statement of undisputed material facts, as required under the federal rules. If "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," a court may "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *see also* Local R. 56(B). Given Plaintiff's failure to adhere to the relevant rules, and upon the Court's review of the record, the Court will consider facts recited in this section to be undisputed material facts. *See Apedjinou v. Inova Health Care Servs.*, No. 1:18-cv-00287, 2018 WL 11269174, at *1 (E.D. Va. Dec. 19, 2018) ("The nonmovant's failure to respond to a fact listed by the movant or to cite to admissible record evidence constitutes an admission that the fact is undisputed."); *Cincinnati Ins. Co. v. Am. Glass Indus.*, No. 1:07-cv-1133, 2008 WL 4642228, at *1 (E.D. Va. Oct. 15, 2008) ("[T]he Court assumes that facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief.") (internal quotations omitted).

location in Alexandria, Virginia. Defendant's Exhibit ("DEX") A. The Vacancy Announcement identified a possible salary range for the position as between $100,498 - $174,152. DEX B. A panel was created to review the credentials for applicants, interview them, and refer the best candidates to the deciding official (Greg McTure) for further consideration. *Id.*

Plaintiff submitted an application to NCUA in response to the Vacancy Announcement. DEX C. She, along with seven other individuals, were selected for an initial interview, and Plaintiff's first interview occurred on October 8, 2022. DEX C, F. Plaintiff's second round interview occurred on October 29, 2021, and on November 16, 2021, NCUA's Human Resources Department ("HR") informed Plaintiff that she had been "tentatively selected" for the position. DEX I, K. On November 16, 2021, an employee from HR and Plaintiff had a conversation in which HR informed Plaintiff that NCUA would match Plaintiff's then-current salary, which was $106,085. DEX L, T. Shortly after this conversation, Plaintiff submitted to HR a detailed written statement requesting a salary of $170,000. DEX K.

On November 24, 2021, NCUA's Chief Information Officer ("CIO") requested that the Executive Director approve a salary in the amount of $155,000 for Plaintiff. In his narrative, the CIO identified why he believed that plaintiff had "superior qualifications" to those of the other candidates, and thus warranted a higher salary for this "critical hire." DEX M. On November 29, 2021, NCUA's Executive Director approved the request. *Id.*

Because of internal staffing changes within NCUA at that time, the reporting structure would have been different from what had been conveyed to her if Plaintiff were to be hired. DEX E. On December 2, 2021, the Director within NCUA's Office of the Chief Information Officer, who had just returned to the agency after a detail, sent an email to Plaintiff entitled "Next Level Interview" and asked Plaintiff whether she was available the following week to meet with her

3

and "discuss [Plaintiff's] interest in [the] organization." DEX E, N. That same evening, Plaintiff sent an email to her NCUA HR contact expressing frustration at the delay in processing her salary request and that she was being asked to interview for a third time. DEX O. In that email, Plaintiff stated that she had "no desire to join [the] agency," stated that "this [was] an outright act of discrimination and [that she] plan[ned] to file an EEO discrimination complaint against you and anyone else involved," and informed NCUA she had "accepted another position who values [her] experience and [was] willing to pay the salary [she] deserve[d]." *Id.* NCUA responded to that email, but Plaintiff did not reply to NCUA; on December 7, 2021, NCUA informed Plaintiff that it had to treat her failure to respond as a "withdrawal from consideration for the subject position." *Id.*

Plaintiff filed a formal administrative complaint of discrimination with NCUA on January 31, 2022. DEX P. On November 9, 2022, the EEOC Administrative Judge ("AJ") presiding over her case issued a "notice of proposed dismissal" informing Plaintiff of the AJ's intent to dismiss Plaintiff's complaint because she had not suffered cognizable harm from NCUA's actions such that she was an "aggrieved" individual under the federal anti-discrimination statutes because Plaintiff had voluntarily withdrawn from consideration during the hiring and salary negotiation process. DEX Q. In response, Plaintiff stated that she was "abandoning" her administrative claims under Title VII in favor of filing a civil action in federal district court under the Equal Pay Act. DEX R. In an order dated December 20, 2022, the EEOC AJ dismissed Plaintiff's administrative complaint, stating that Plaintiff was not "aggrieved" because she "withdrew her candidacy while salary negotiations were ongoing or while she was waiting for the Agency's response to the salary she required." DEX S.

4

## II. LEGAL STANDARDS

### A. RULE 12(B)(6)

This Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Nevertheless, a plaintiff must make more than bald accusations or mere speculation; "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are insufficient under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). A complaint by a *pro se* plaintiff should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But the Court's "task is not to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

### B. RULE 56

Summary judgment is proper where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Tech. Apps. & Servs. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996). The movant bears the burden of demonstrating an absence of a genuine

issue of material fact. *Celotex Corp. v. Carrett*, 477 U.S. 317, 327 (1986). If the movant has met that burden, the non-moving party must demonstrate that such an issue of fact exists. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A party opposing . . . summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–53. In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

### III. DISCUSSION

#### A. EQUAL PAY ACT

The Court dismisses the Equal Pay Act for failure to state a claim for relief under Rule 12(b)(6). Plaintiff's Equal Pay Act ("EPA") claim alleges that the NCUA's putative salary offer of $155,000 was lower than other NCUA employees "at the same grade level" as the position for which she had applied. Compl. at 3. But "[t]he Equal Pay Act applies to sex-distinction-based pay-discrimination claims for employees." *Alja-Iz v. U.S. Virgin Islands Dep't of Ed.*, 626 F. Appx. 44, 47 (3d Cir. 2015). Here, Plaintiff alleges that she was *not* hired for the position she sought, not that she was an employee who was paid less for equal work than employees of the opposite sex. Indeed, Plaintiff never alleges that she entered into employment with, or performed any work for, NCUA. Plaintiff cannot sustain a claim under the Equal Pay Act without having been in some kind of employment relationship with NCUA.

The EPA provides:

6

> No employer having employees . . . shall discriminate . . . between *employees* on the basis of sex by paying wages to *employees* in such establishment at a rate less than the rate at which he pays wages to *employees* of the opposite sex in such establishment *for equal work on jobs the performance of which* requires equal skill, effort, responsibility.

29 U.S.C. § 209(d) (emphasis added). The overarching statute of which the EPA is a part defines the term "employee" as "any individual *employed* by an employer." *Id.* § 203(e)(1) (emphasis added). And other courts have held that the EPA only applies to individuals who have actually entered into employment with the entity from which they seek relief. *E.g.*, *McNierney v. McGraw-Hill, Inc.*, 919 F. Supp. 853 (D. Md. 1995) ("The EPA addresses actually paying different wages to similarly situated employees. It does not appear to apply to potential employees."); *Alja-Iz.*, 626 F. Appx. at 47. Because Plaintiff never entered into an employment relationship with NCUA, she cannot state a claim for relief under the EPA, and the Court therefore dismisses this claim with prejudice.

### B. TITLE VII DISCRIMINATION

Plaintiff references "disparate treatment in the hiring, recruiting and compensation process" based on her race and gender, although she has not expressly raised a Title VII discrimination claim in her Complaint. Given Plaintiff's *pro se* status, however, the Court will liberally construe Plaintiff's complaint to present a Title VII discrimination claim alleging that NCUA acted with unlawful discriminatory animus against her on the basis of her race and gender in failing to hire Plaintiff for a vacant IT position. As with the EPA claim, however, Plaintiff cannot maintain a Title VII claim because no adverse employment action was taken against her because she voluntarily withdrew her employment application; she therefore cannot establish a *prima facie* case for racial or sex discrimination.[3]

---

[3] The Court recognizes that Plaintiff has named the wrong defendant. *See* 42 U.S.C. § 2000e-16(c) (providing that with respect to claims of employment discrimination or retaliation arising out of federal employment, the proper party

Because there is no direct evidence of discrimination, Plaintiff must prove any discrimination claim through circumstantial evidence and the analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Plaintiff must first establish a *prima facie* case of discrimination before the burden shifts to Defendant. Plaintiff cannot clear this hurdle hear. To the extent Plaintiff intends to raise a Title VII claim, that claim would be a failure to hire. To make out a *prima facie* case of employment discrimination for failure to hire in the absence of direct evidence of discrimination, Plaintiff must show that: (1) she "is a member of [a] protected class;" (2) "the employer had an open position for which she applied or sought to apply;" (3) she "was qualified for the position;" and (4) she "was rejected under the circumstances giving rise to an inference of unlawful discrimination." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015).

A Title VII plaintiff must demonstrate that she suffered an "adverse employment action," or something that caused "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or . . . a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). In a failure to hire case, this adverse employment action is the rejection of a candidate from a position. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015) (establishing *prima facie* case for failure to hire requires candidate to establish she "was rejected . . . "). Here, the evidence clearly establishes that Plaintiff voluntarily decided to *withdraw* her application for employment with NCUA. NCUA did not *reject* plaintiff's

---

defendant is "the head of the department, agency, or unit," rather than the agency itself). Because this deficiency can easily be corrected in an amended pleading, the Court will provide Plaintiff with the benefit of a liberal construction of her pleadings and proceed to assess the merits of Plaintiff's claim.

8

application or refuse to hire her. To the contrary, the extensive record developed during administrative proceedings demonstrates that NCUA selected plaintiff for the position and authorized a salary well above the minimum salary posted with the Vacancy Announcement. When a candidate *voluntarily withdraws* her application for employment, she has not suffered the type of adverse action that can sustain a subsequent Title VII action. *See, e.g.*, *Rakhshandeh v. Texas Tech Univ.*, 2023 WL 2316928, at*7-8 (N.D. Tex. Jan. 31, 2023) (voluntary withdrawal of application for university tenure precluded adverse employment action); *Keshinover v. N.Y. State Office of Parks, Rec., & Hist. Preserv.*, 2019 WL 5212235, at *9 (S.D.N.Y. Oct. 15, 2019), *aff'd*, 826 Fed. Appx. 109 (2d Cir. 2020); *Burt v. Nat'l Republican Club*, 828 F. Supp. 2d 113, 125 (D.D.C. 2011). Plaintiff cannot establish that her application was rejected such that she suffered an adverse employment action within the meaning of Title VII. Accordingly, the Court finds that summary judgment on any Title VII claim is warranted in NCUA's favor.

### IV.   CONCLUSION

For the reasons stated above, the Court will grant Defendant's Motion to Dismiss and for Summary Judgment in an Order to be issued with this Memorandum Opinion.

/s/<br>
Hon. Michael S. Nachmanoff<br>
United States District Judge

Alexandria, Virginia
November 3, 2023